# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**MARY ANN MONEY,**

        **Plaintiff,**

**v.**                                         **Case No. 8:12-CV-2276-T-30AEP**

**CAROLYN W. COLVIN,**
**Acting Commissioner of the United**
**States Social Security Administration,**

        **Defendant.**

_____/

## REPORT AND RECOMMENDATION

The Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

Upon a review of the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the ALJ's decision, the administrative record, and the pleadings and memoranda submitted by the parties in this case, and for the reasons set forth herein, I recommend that the Commissioner's decision in this case be **AFFIRMED**.

## I.  Background

The Plaintiff filed for DIB and SSI on December 9, 2009.  R. 75-76.  The Plaintiff's applications were denied initially and upon reconsideration.  R. 87-92, 97-104.  The Plaintiff requested and received a hearing, which was held on October 11, 2011 before ALJ Daniel Piloseno (the "Hearing").  R. 35-55.  At the Hearing, the Plaintiff changed her date of alleged onset of disability from September 26, 2009 to November 29, 2010.  R. 152, 38.  In a decision

dated November 15, 2011 (the "Decision"), the ALJ found the Plaintiff not disabled as defined under the Act.  R. 14-26.  The Plaintiff timely exhausted her administrative remedies, and this case is properly before the Court for review under 42 U.S.C. § 405(g).

## II.  The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the five-point sequential evaluation process established by the Social Security Administration and set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).  Specifically, the ALJ must determine whether the claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four, and, at step five, the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

In his Decision, the ALJ performed the required five-step sequential analysis.  R. 14-26. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since her original date of alleged onset.  R. 16.  At step two, the ALJ determined that the Plaintiff suffered from the severe impairments of degenerative joint disease of the left knee, degenerative joint disease of the left shoulder, osteoarthritis of the lumbar spine, hypertension, bilateral hand tremors, major depressive disorder, anxiety disorder, and a history of alcoholism.  R. 16.  At step three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 16-18.  Next, the ALJ found that the Plaintiff retained the residual functional capacity ("RFC") to perform a reduced range of light work.  R. 18-24.  At step four, the ALJ

determined that the Plaintiff was not capable of performing any past relevant work.  R. 24-25.

At step five, based on the testimony of a vocational expert ("VE") at the Hearing, the ALJ found

that the Plaintiff was able to perform the requirements of the representative occupations of an

office helper, customer service clerk, cashier II, and ticket seller.  R. 25-26.  Based on his finding

at step five, the ALJ concluded that the Plaintiff was not disabled under the Act.  R. 26.

### III. Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the

correct legal standards and whether the findings are supported by substantial evidence.

*Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Substantial

evidence is "more than a scintilla but less than a preponderance.  It is such relevant evidence that

a reasonable person would accept as adequate to support a conclusion."  *Winschel v.*

*Commissioner of Social Security*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).  If the

Commissioner's findings of fact are supported by substantial evidence, they shall be conclusive.

42 U.S.C. § 405(g).  Further, when the Commissioner's decision is supported by substantial

evidence, the district court will affirm even if the reviewer would have reached a contrary result

as finder of fact and even if the reviewer finds that the preponderance of the evidence is against

the Commissioner's decision.  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The district

court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of

the [Commissioner.]"  *Id.*  "The district court must view the record as a whole, taking into

account evidence favorable as well as unfavorable to the decision."  *Foote v. Chater*, 67 F.3d

1533, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992)

(noting that the court must scrutinize the entire record to determine the reasonableness of the

factual findings).

## IV. Discussion

The Plaintiff challenges the ALJ's Decision on two grounds:

1)        The ALJ erred in evaluating the Plaintiff's cervical spinal impairment; and

2)        The ALJ erred in evaluating the Plaintiff's limitation in maintaining concentration, persistence, or pace.

For the reasons discussed below, the Court finds that the ALJ's Decision was based on substantial evidence and comported with applicable legal standards.

### A.        The ALJ's Evaluation of the Plaintiff's Cervical Spinal Symptoms

First, the Plaintiff argues that the ALJ erred by failing to incorporate symptoms related to her alleged cervical spinal impairment into his step two finding and RFC assessment.  At step two, the claimant bears the burden of proving the existence of a severe impairment.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).  In determining the severity of an impairment at step two, evidence about the functionally limiting effects of an individual's impairments must be evaluated in order to assess the effect of the impairments on the individual's ability to perform basic work activities.  *See* SSR 96-3p, 1996 WL 374181, at *2 (July 2, 1996).  However, at step two, the ALJ is not required to identify all of the impairments that should be considered severe.  *See Heatly v. Commissioner of Social Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010) ("Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe.").  Instead, at step three, the ALJ is required to demonstrate that he has considered all of the claimant's impairments, whether severe or not, in combination.  *Id.* (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987); *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) (explaining that the ALJ must make "specific and well-articulated findings as to the effect of the combination of impairments").

At step two, the ALJ did not identify a severe impairment related to the Plaintiff's alleged cervical spinal impairment.  However, the ALJ was under no duty to identify this impairment at step two so long as he considered the functional impact of all of the Plaintiff's impairments, whether severe or not, throughout the remainder of his Decision.  *Heatly v. Commissioner of Social Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010).  With regards to the Plaintiff's cervical spinal impairment, the ALJ acknowledged that the Plaintiff suffered from neck pain and underwent testing of the cervical spine, but correctly stated that findings upon examination were "normal."  R. 20.  In a February 23, 2010 consultative evaluation, Bhupendra Kumar Gupta, M.D., found that the Plaintiff had "normal cervical lordosis without evidence of straightening," there was "no tenderness" upon palpation of the cervical spine, and there was "no palpable muscle spasm in [the] para-cervical region."  R. 390.  In addition, Dr. Gupta did not observe any cervical masses or other functional deficiencies related to the neck or cervical spine.  R. 388-96.  Upon examination, Dr. Gupta also observed normal forward flexion, extension, lateral flexion, and rotation of the Plaintiff's cervical spine.  R. 393.  The remainder of the record is mostly unremarkable concerning the Plaintiff's cervical spine.  While there is evidence documenting complaints of neck pain, the record is devoid of objective medical evidence documenting functional limitations specifically related to the Plaintiff's cervical spine during the relevant period.

The Plaintiff argues that the record contains "substantial evidence" documenting her cervical spinal impairment, including multiple imaging studies and diagnoses of degenerative disc disease of the cervical spine.  (Dkt. No. 15 at 10.)  However, all of these records pre-date the Plaintiff's date of alleged onset by at least three years.  *See* R. 332-33, 353, 358-60.  Further, the records identified by the Plaintiff document mild degenerative changes of the cervical spine, and

they did not specify any significant functional limitations related to the Plaintiff's alleged cervical spinal impairment.  *See* R. 332-33, 353, 358-60.  Instead, a December 2005 treatment note documented a "[f]ull range of motion in [the Plaintiff's] C-Spine without spasm," intact reflexes and sensations, and no muscle weakness.  R. 358.  The Plaintiff asserts that the "limitations in climbing and reaching could vaguely account for [the Plaintiff's] cervical impairment, but the problem is that the ALJ gave no indication whether these limitations accounted for [the Plaintiff's] cervical impairment."  (Dkt. No. 15 at 11-12.)  In his Decision, the ALJ incorporated into his RFC assessment a wide range of functional restrictions related to the Plaintiff's severe impairments, including limitations for climbing, balancing, stooping, crouching, kneeling, crawling, sitting, standing, and overhead reaching.  R. 18.  The Plaintiff fails to specifically identify any additional functional limitations related to her cervical spinal impairment that, by her argument, should have been incorporated into his RFC assessment.  Further, at the Hearing, the Plaintiff did not allege that she currently suffers from neck pain, let alone identify any functional limitations relating to neck pain.  Thus, the Court finds that the ALJ's evaluation of the Plaintiff's alleged cervical spinal impairment was based on substantial evidence, and the Plaintiff's first argument is without merit.

**B.     The ALJ's Analysis of the Plaintiff's Ability to Maintain Concentration, Persistence, or Pace**

Next, the Plaintiff argues that the ALJ erred by concluding in his RFC assessment that the Plaintiff's "impairments, pain and side effects of medication would interfere with concentration, persistence and pace approximately *two minutes* each workday hour."  R. 18 (emphasis added).  "The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  An individual's RFC is her ability to do physical and mental work

activities on a sustained basis despite limitations secondary to her established impairments. *Delker v. Commissioner of Social Security*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009).   In determining a claimant's RFC, the ALJ must consider all of the relevant evidence of record. *Barrio v. Commissioner of Social Security*, 394 F. App'x 635, 637 (11th Cir. 2010).   However, the Eleventh Circuit has consistently held that "the claimant bears the burden of proving that [she] is disabled, and consequently, [she] is responsible for producing evidence in support of her claim."  *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

In his Decision, the ALJ evaluated the Plaintiff's ability to maintain concentration, persistence, or pace in accordance with the "special technique" dictated by the Social Security regulations and found that the Plaintiff had "mild to moderate difficulties" in this area of mental functioning.   20 C.F.R. § 416.920a(b)(1); R. 17.   The ALJ noted that the Plaintiff had "good recall of recent and remote events suggesting no short-term or long-term memory impairment," and the Plaintiff "reported that she needed no reminders and could pay attention for approximately 30 minutes at a time."  R. 17.   This conclusion was supported by the Plaintiff's April 16, 2010 function report and an April 22, 2010 consultative examination by Jeremy Zehr, Psy.D.   R. 227-34, 399-402.   In her function report, the Plaintiff stated that she was able to perform a number of activities of daily living, such as preparing meals, dusting, washing dishes, doing laundry, shopping, and handling finances, without any mental deficits related to her alleged symptoms.   R. 227-30.   When prompted in the function report to describe what abilities were limited by her symptoms, the Plaintiff checked off the limitations of "concentration," "understanding," and "following instructions."  R. 232.   The Plaintiff stated that she could pay attention for thirty minutes at a time, but was unable to "finish what [she] start[s]" and could not follow written or spoken instructions well.  R. 232.   The Plaintiff did not, however, check off a

limitation for "memory" or "talking." R. 232.  Further, with regard to her physical abilities, the Plaintiff noted that she uses a "cane and brace/splint when the pain gets [too] uncomfortable." R. 233.  In his consultative examination, Dr. Zehr observed that the Plaintiff was "alert and well oriented," "seemed reliable," and had "[g]ood recall of recent and remote events…suggesting no severe short-term or long-term memory impairment." R. 400-01.  Further, Dr. Zehr found that the Plaintiff's "[s]peech and thought processes were logical and coherent," "[n]o articulation problems were noticed," and the Plaintiff "had a full range of appropriate affects and appeared in mild mental distress." R. 401.  Finally, with regards to the Plaintiff's physical impairments, Dr. Zehr noted that the Plaintiff had "no prominent gait abnormalities or gross motor coordination," and made no mention of a cane or other assistive device.  R. 400.

At the Hearing, the Plaintiff testified that she stopped working as a waitress because the restaurant closed and she had "fallen and hurt [herself] on [her] arm." R. 37.  In terms of pain, the Plaintiff testified that she suffers at a level of eight on a scale of ten.  R. 40.  In terms of medications, the Plaintiff stated that she takes Ibuprofen for her pain and, aside from occasional dizziness, does not experience any side effects from her medicine.  R. 40-41.  After being prompted by her attorney, the Plaintiff claimed that she experienced some problems with memory and communicating with people.  R. 42.  The Plaintiff testified that she "[doesn't] know how to talk to people," "can't express [herself] for them to understand what [she's] saying," and cannot "remember half of what [her attorney] asked [her] and what [she] said." R. 42.  Later in the Hearing, the ALJ asked the VE to consider whether a hypothetical individual that, among other functional limitations, "has mental impairments, pain, and side effects of medications which will interfere with concentration, persistence, and pace about *two minutes* each workday hour" was able to work.  R. 51 (emphasis added).  The VE testified that this hypothetical

individual would be able to perform the requirements of the representative occupations of an office helper, customer security clerk, and cashier.  R. 52.  The ALJ then asked the VE whether a hypothetical person who has "mental impairments, pain, and side effects of medications which will interfere with concentration, persistence, and pace about *five minutes* each workday hour" was able to work, to which the VE responded "[n]o."  R. 53 (emphasis added).  Clarifying, the ALJ asked, "[s]o two minutes is okay, five minutes is not," to which the VE answered "[y]es."  R. 52.

In his Decision, the ALJ ultimately found that the Plaintiff had the RFC to perform a limited range of light work with, among other non-exertional limitations, a limitation in maintaining concentration, persistence, and pace for "approximately *two minutes* each workday hour."  R. 18 (emphasis added).  In making this determination, the ALJ found that the Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with his RFC assessment.  R. 20.  In support of this finding, the ALJ noted that the ALJ's complaints of disabling symptoms were not corroborated by objective medical findings in the record.  R. 20-24.  The ALJ also noted that the Plaintiff "reported numerous times that she stopped working primarily because the restaurant [where she was working] closed," as opposed to reasons related to her physical and mental impairments.  R. 23.  The ALJ identified several inconsistencies between the Plaintiff's testimony at the Hearing and the objective medical evidence.  R. 18-24.  For instance, while the Plaintiff testified at the Hearing that she had difficulties communicating, the bulk of the medical evidence reveals that the Plaintiff's communicative abilities were normal.  *Compare* R. 42 *to* R. 290 (noting that speech was clear and the Plaintiff used "[a]ppropriate words or phrases for age"), 307 ("Patient is pleasant.  She is polite.  She is cooperative.  Speech is coherent, monotone, and goal directed."),

R. 389 ("Claimant has no problem in speech. … Claimant seems to understand spoken speech and response verbally in appropriate way."), 401 ("Speech and thought processes were logical and coherent.  No articulation problems were noticed."), 424 (noting that the Plaintiff had "normal speech, normal thought processes and normal thought content, cooperative, adequate concentration and recent memory, adequate insight and judgment, no indication of psychotic process."), 505 (stating, upon mental examination, "speech clear, oriented X 3, normal affect, responds appropriately to questions"), 508.  In addition, even though the Plaintiff alleged that she has been using a cane, the record shows that none of her physicians recommended any assistive device for the Plaintiff's ambulation.  R. 22-24.  The ALJ specifically noted that Dr. Zehr reported "no prominent gait abnormalities."  R. 21.  Further, Dr. Gupta found that the Plaintiff "can ambulate without [an] assistive device," and the Plaintiff's gait was "steady and directed." R. 391.  Finally, the ALJ found that the Plaintiff had a "generally unpersuasive appearance and demeanor while testifying at the hearing."  *See Norris v. Heckler*, 760 F.2d 1154, 1158 (11th Cir. 1985) (noting that an ALJ may consider a claimant's demeanor when judging her credibility).

After reviewing the record, the Court finds that the ALJ's RFC assessment and credibility finding were supported by substantial evidence.  The Plaintiff's claims of disabling mental impairments are largely unsupported by the objective record.  The Plaintiff saw psychiatrist Hany Butros-Mikhail, M.D., on six occasions from December 2010 to September 2011.  R. 473-75.  However, the corresponding treatment notes are largely illegible and fail to establish a longitudinal record of the Plaintiff's mental impairments.  R. 473-75.  Dr. Butros-Mikhail completed a September 19, 2011 mental evaluation form, in which he identified extreme mental impairments in over twenty categories of mental functioning.  R. 471-72.  However, the ALJ properly discounted Dr. Butros-Mikhail's findings as conclusory and unsupported by the record.

R. 22-23; *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (noting that an ALJ may reject a treating source's opinion where it was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with her own medical record). The Plaintiff also directs the Court to evidence documenting "chronic" left shoulder pain in support of her argument. (Dkt. No. 15 at 16.) However, the Plaintiff does not explain how this evidence, or any other evidence on record, compels the addition of three or more minutes of hourly impairment time related to her ability to maintain concentration, persistence, and pace. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Nevertheless, the ALJ gave the Plaintiff "some benefit of the doubt as to her condition," and ultimately incorporated mental limitations into his RFC assessment. R. 18. Overall, the ALJ's findings concerning the Plaintiff's ability to maintain concentration, persistence, and pace are well reasoned and supported by the record as a whole. Thus, the Plaintiff's second argument is without merit.

### V. Conclusion

Accordingly, for the foregoing reasons, it is **RECOMMENDED** that:

1.      The Commissioner's final decision in this case be **AFFIRMED**.

2.      The Clerk enter judgment accordingly and **CLOSE** the file.

**IT IS SO REPORTED** in Tampa, Florida on February 3, 2014.


ANTHONY E. PORCELLI
United States Magistrate Judge

**<u>NOTICE TO PARTIES</u>**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a de novo determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice.   28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc).

Copies furnished to:

Hon. James S. Moody, Jr.
Counsel of Record